**UNITED STATES of America,
Plaintiff-Appellant,**

v.

**WHAS, INC., Defendant-Appellee.**

**No. 17429.**

United States Court of Appeals
Sixth Circuit.

Dec. 5, 1967.

---

Walter H. Fleischer, Dept. of Justice, Washington, D. C., for appellant, Barefoot Sanders, Asst. Atty. Gen., David L. Rose, Harvey L. Zuckman, Attys., Dept. of Justice, Washington, D. C., Ernest W. Rivers, U. S. Atty., Louisville, Ky., on brief, Henry Geller, Gen. Counsel, Hilburt Slosberg, Associate Gen. Counsel, Barbara B. O'Malley, Counsel, F. C. C., of counsel, Carl Eardley, Acting Asst. Atty. Gen., John C. Eldridge, Harvey L. Zuckman, Attys., Dept. of Justice, Washington, D. C., on reply brief.

Edgar A. Zingman, Louisville, Ky., for appellee, Wilson W. Wyatt, A. Wallace Grafton, Jr., Louisville, Ky., on brief, Wyatt, Grafton & Sloss, Louisville, Ky., of counsel.

Before EDWARDS, CELEBREZZE and PECK, Circuit Judges.

EDWARDS, Circuit Judge.

In what appears to us to be a first impression decision, the Federal Communications Commission ruled by a closely divided vote that television station WHAS had "willfully" violated the Federal Communications Act, 47 U.S.C. § 317 (a) (1964), and a Regulation of the FCC, 47 C.F.R. § 3.654(c) (1963), now, 47 C.F.R. § 73.654(f) (1967). The FCC declared a forfeiture of $1,000 as a result.

On WHAS's refusal to pay the forfeiture, the FCC filed a complaint in the United States District Court for the Western District of Kentucky under 47 U.S.C. § 504(a) to collect the forfeiture. The United States District Judge granted WHAS's motion for summary judgment, holding that there were no genuine disputes of fact to be tried. The United States of America appeals.

During a 1963 primary campaign between former Governor A. B. (Happy) Chandler and now former Governor Edward T. Breathitt for the Kentucky governorship, WHAS had televised a program entitled "The Chandler Years in Review." The program was identified as a paid political telecast. The program's sponsor was identified as the "Committee for Good Government."

The program was distinctly unfavorable to Chandler, and his campaign manager promptly protested the station's failure to identify the "Breathitt for Governor Committee" as the sponsor of the program.

The Commission held that the facts available to the station put it on notice that the funds used in payment for the broadcast had been furnished by the Breathitt for Governor Committee. The Commission stated that "the true sponsor was in fact Edward T. Breathitt."

In this appeal the United States of America relied upon the following facts, as recited in its brief:

"During the 1963 Kentucky Democratic gubernatorial primary campaign between former Governor A. B. (Happy) Chandler and Edward T. (Ned) Breathitt, a one-half hour taped television program was prepared and broadcast on behalf of Breathitt's candidacy entitled 'The Chandler Years in Review' and described as ' * * * the true story of what A. B. Chandler has done for, and to, Kentuckians.' An advertising agency, Zimmer-McClaskey-Lewis (hereafter 'the agency'), known by station WHAS-TV to be representing Breathitt in the campaign, sought WHAS's facilities to tape and broadcast the program and advised the management that sponsorship would

probably be by the 'Business Friends of Ned Breathitt' committee.

\*   \*   \*   \*   \*   \*

"The agency's representative, Mary Lou Moore, however, told the station management that the program would be sponsored by the 'Committee for Good Government' (hereafter referred to as 'CGG'). And, in fact, the application for political broadcast stated that the CGG would furnish the funds for the requested air time, and that it should be described as the sponsor. The same document, however, which was signed by Miss Moore for the CGG, also stated that CGG was representing Breathitt. ('We, Committee for Good Government representing Ned Breathitt \* \* \*'). In addition, the contracts for air time reflected that the time was being sold to 'Committee for Good Government and/or Zimmer-McClaskey-Lewis, Inc.' and the CGG 'on behalf of the above-mentioned candidate.' (Breathitt)."

The application for political broadcast referred to above, listed names and addresses of two officers of the Committee for Good Government. It also stated:

"I/we represent herewith that the funds to be used in payment for the above described broadcast time have been furnished by <u>Comm. for Good Government</u> and you are directed to so describe the sponsor in your log, or otherwise, and to announce the program as paid for by such person(s) or organization."

It is also undisputed that the Committee for Good Government had been formed more than a year prior to the 1963 Kentucky gubernatorial campaign "to improve local government in Pike County, Kentucky."

Appellant FCC's basic position is set out in its brief:

"[T]he Commission simply requires that if the ostensible sponsoring committee is not in fact independent of the candidate and his campaign organization, but is acting in his behalf, with the funds coming directly or indirectly from the candidate or his organization

the licensee who knows or has reason to know the facts must identify the candidate on whose behalf the program is broadcast."

If this language (or a reasonable equivalent thereof) could be found in statute or regulation, there is no doubt that the instant litigation would require remand for the resolution of a number of issues of fact in a testimonial hearing.

Since we believe that the FCC Regulations (by at least a permissible interpretation) authorized the station to do exactly what it did under the facts as the Commission represents them to be, we find no need to remand.

The District Judge entered the following conclusions of law, which we affirm:

"1. Defendant did not willfully violate the provisions of the Communications Act of 1934, 47 U.S.C. Section 151 et seq. or any rule or regulation of the Federal Communications Commission thereunder.

"2. The Regulations of the Federal Communications Commission, Section 3.654 (47 C.F.R. Section 73.654) do not by their terms require disclosure of the name of the candidate (which the broadcast is intended or seeks to support) in addition to the name of the sponsor of the program."

The Federal Communications Act § 317(a) provides:

"(1) All matter broadcast by any radio station for which any money, service or other valuable consideration is directly or indirectly paid, or promised to or charged or accepted by, the station so broadcasting, from any person, shall, at the time the same is so broadcast, be announced as paid for or furnished, as the case may be, by such person: *Provided*, That 'service or other valuable consideration' shall not include any service or property furnished without charge or at a nominal charge for use on, or in connection with a broadcast unless it is so furnished in consideration for an identification in a broadcast of any person, product, service, trademark, or brand name beyond

an identification which is reasonably related to the use of such service or property on the broadcast.

"(2) Nothing in this section shall preclude the Commission from requiring that an appropriate announcement shall be made at the time of the broadcast in the case of any political program or any program involving the discussion of any controversial issue for which any films, records, transcriptions, talent, scripts, or other material or service of any kind have been furnished, without charge or at a nominal charge, directly or indirectly, as an inducement to the broadcast of such program." 47 U.S.C. § 317(a) (1964).

The language of this statute is not without ambiguity. But at least one reading of it might arguably support the interpretation which the FCC places on it in its brief.

However, the FCC itself in its Regulations has tendered its licensees an entirely different interpretation. It is true that the section of the Regulations relied upon by the government provides:

"(c) The announcement required by this section shall fully and fairly disclose the true identity of the person or persons by whom or. in whose behalf such payment is made or promised, or from whom or in whose behalf such services or other valuable consideration is received, or by whom the material or service referred to in paragraph (b) of this section are furnished. Where an agent or other person contracts or otherwise makes arrangements with a station on behalf of another, and such fact is known to the station, the announcement shall disclose the identity of the person or persons in whose behalf such agent is acting instead of the name of such agent." 47 C.F.R. § 3.654 (c) (1963), now, 47 C.F.R. § 73.654(f) (1967).

But in the very next paragraph (which perhaps significantly neither the Commission majority nor the FCC briefs in this case discuss at all!) the following language is found:

"(d) In the case of any program, other than a program advertising commercial products or services, which is sponsored, paid for or furnished, either in whole or in part, or for which material or services referred to in paragraph (b) of this section are furnished, by a corporation, committee, association or other unincorporated group, the announcement required by this section shall disclose the name of such corporation, committee, association or other unincorporated group. In each such case the station shall require that a list of the chief executive officers or members of the executive committee or of the board of directors of the corporation, committee, association or other unincorporated group shall be made available for public inspection at one of the television broadcast stations carrying the program." 47 C.F.R. § 3.654. (d) (1963), as amended, 47 C.F.R. § 73.654(g) (1967).

This paragraph would seem to be designed to be more specifically applicable to the current set of facts than paragraph (c). Further, appellee WHAS appears to have relied upon paragraph (d), since its form required the listing of the officers of the sponsoring committee.

Paragraph (d), simply by eliminating the alternatives, can be read as authorizing defendant's interpretation in so many words:

"In case of any program * * * which is sponsored * * * by a * * * committee * * *, the announcement required by this section shall disclose the name of such * * * committee."

We find absolutely nothing in the statute or the Regulations thus far published by the FCC to prohibit a station from thus interpreting the Regulation. Nor, assuming for a moment that the Commission's Public Notices could amend its Regulations, do we find any language in any of them which are called to our attention which prohibits the interpretation just referred to.

The Commission's brief refers to "the pernicious results" of the District Court's

decision. In affirming that decision we are by no means precluding the FCC from adopting a Regulation calculated to require a station to make reasonable efforts to go beyond a named "sponsor" for a political program in order to ascertain the real party in interest for purposes of announcement. We recognize that there are difficulties both in drafting and enforcing such a Regulation—particularly in situations where the source of funds for the program is claimed to be independent of the candidate, or where in fact the source is actually independent of the candidate and is either a well-intentioned or ill-intentioned volunteer. Whatever the difficulties may be, it seems obvious to us that the Commission should seek to face and resolve them in a published Regulation rather than relying on the intuition of its licensees.

Affirmed.